**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**
**September 23, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **H.M., L.M., J.M., and B.M.**

**No. 20-0193** (Webster County 19-JA-19, 19-JA-24, 19-JA-25, and 19-JA-26)

## MEMORANDUM DECISION

Petitioner Father J.M., by counsel Howard J. Blyler, appeals the Circuit Court of Webster County's January 23, 2020, order denying his request for an improvement period and terminating his parental rights to H.M.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem, Mary E. Snead, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying his request for an improvement period and terminating his parental rights to H.M.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]Despite the fact that petitioner's parental rights to L.M., J.M., and B.M. were also terminated in the proceedings, petitioner makes no mention of these children in his brief on appeal and raises no argument in regard to the termination of his parental rights to these children. Because petitioner argues only against the termination of his parental rights to H.M., this memorandum decision focuses solely on the facts related to that child and addresses only the termination of petitioner's parental rights to that child. However, we note that because petitioner failed to raise any argument in regard to the termination of his parental rights to L.M., J.M., and B.M., we affirm the circuit court's dispositional order in regard to the termination of his parental rights to those children.

1

In May of 2019, the DHHR filed a child abuse and neglect petition against petitioner and C.P., a possible custodian of H.M. The DHHR alleged that a Child Protective Services ("CPS") worker and two law enforcement officers went to petitioner's and C.P.'s joint residence to investigate allegations of drug use and poor living conditions in the home. Upon arrival, the law enforcement officers encountered two other individuals leaving the residence, both of whom possessed needles and methamphetamine. The worker alleged the home was dirty and cluttered with garbage piled inside and outside the home, clothing piled in garbage bags inside closets, and dirty dishes and other items strewn throughout the residence. Further, the DHHR alleged that the home lacked electricity and had overgrown grass, junked vehicles, and piles of trash and empty beer cans throughout the yard. The worker also found a pipe normally used for controlled substances in petitioner's bedroom. Petitioner was absent at the time of the worker's visit. However, C.P. informed the worker that the home was messy and lacked electricity because they were in the process of moving. C.P. also claimed to not know where petitioner was at that time and refused to participate in a drug screen. The CPS worker eventually found petitioner at his cousin's residence. Petitioner claimed that his home lacked electricity because the heat pump was broken. Finally, the CPS worker interviewed twelve-year-old H.M. who said that the home had been without power for some time and did not know the family planned on moving. Later that month, the circuit court held a preliminary hearing. Petitioner did not attend but was represented by counsel. The court found that imminent danger to H.M. existed, removed the child from the home, and ordered that petitioner participate in drug screens.

During the August of 2019 dispositional hearing, several witnesses testified to petitioner abusing and neglecting the child. After a full hearing, the court recessed while petitioner and C.P. submitted to drug screens. Petitioner tested positive for buprenorphine and alcohol, while C.P. tested positive for methamphetamine, amphetamine, and buprenorphine. Following the hearing, the court found that petitioner failed to provide H.M. any support or maintenance or a fit and suitable home. Specifically, the court found that petitioner's home lacked electricity and was "unkempt and dirty." The court also found that petitioner was addicted to drugs, which affected his ability to provide for the health, safety, and welfare of the child. Ultimately, the circuit court adjudicated petitioner as an abusing and neglecting parent.

In December of 2019, the circuit court held a final dispositional hearing wherein it considered petitioner's motion for an improvement period and the DHHR's motion to terminate petitioner's parental rights. During the hearing, petitioner indicated that he would comply with the terms and conditions of an improvement period. Specifically, petitioner testified that he had entered into a drug treatment facility but left the facility after they failed to provide him with medical treatment for his injured back. Petitioner testified that he had participated in parenting classes, was employed at his father's shop, and was willing to comply with other services. However, petitioner testified that he preferred not to return to drug treatment, stating he needed "to stay there and help dad with the shop. . . . I would like to stay right there where I'm at and— either that or sign my rights away." Further, petitioner acknowledged that although he "was supposed to be [at the substance abuse treatment facility] to get treatment for drugs," he had tested positive for controlled substances just a few weeks after leaving the facility and admitted to using a friend's vaporizer and consuming alcohol. While petitioner claimed that he thought the vaporizer contained only nicotine, the DHHR moved for the admission of petitioner's recent drug screen.

The court admitted that screen, wherein petitioner tested positive for marijuana, methamphetamine, suboxone, buprenorphine, and norbuprenorphine.

As a result of the testimony and evidence presented, the circuit court denied petitioner's motion for an improvement period, finding there was no evidence that petitioner would comply with the terms of an improvement period. According to the record, the DHHR submitted extensive evidence of petitioner's noncompliance with services and inability to correct the conditions of abuse and neglect during the proceedings, such as his continued positive drug screens and refusal to return to a substance abuse treatment facility. The DHHR also presented evidence that petitioner did not participate in any additional services after he voluntarily left his substance abuse treatment program. Based on the evidence presented, the circuit court concluded that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that it was in H.M.'s best interest to terminate petitioner's parental rights. Accordingly, the court terminated petitioner's parental rights by its January 23, 2020, order.[3] It is from this dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner alleges that the circuit court erred in denying his motion for a post-adjudicatory improvement period because he sought to improve his substance abuse problem through treatment. Petitioner argues that the "sole question is whether or not the [c]ircuit [c]ourt adequately considered [his] testimony." Petitioner then asserts that he had "sufficient grounds" for leaving the substance abuse treatment facility and that he would have reentered drug treatment if given the chance. In light of this, he argues that the circuit court should have granted him a post-adjudicatory improvement period. We disagree.

---

[3]The mother's parental rights were also terminated. The permanency plan is for the child to be adopted by her current foster family. Following the termination of petitioner's parental rights to the remaining children, they were placed in the custody of their nonabusing mothers with a permanency plan to remain in their care.

Notably, petitioner does not dispute that he tested positive for marijuana, methamphetamine, suboxone, buprenorphine, and norbuprenorphine on various drug screens. Further, he does not disagree that he regularly encountered and used controlled substances throughout the pendency of these proceedings, including testing positive for multiple substances weeks after leaving his treatment program prior to its completion. Indeed, petitioner readily recalled specific instances of substance abuse at his dispositional hearing, such as when a friend gave him a vaporizer that contained unknown substances. Despite this evidence, petitioner challenges the circuit court's finding that he was unlikely to fully participate in an improvement period because he had been attending parenting classes, briefly participated in a substance abuse treatment program, and was willing to reenter a treatment program. Yet, the record demonstrates that petitioner was unlikely to fully participate in an improvement period, in large part because he failed to stay at the treatment facility and continued to test positive for controlled substances. While petitioner argues that he left the treatment facility due to employment opportunities and would return to a treatment program in the future, this was entirely speculative in nature. Indeed, petitioner's own testimony that he would rather stay with his father or "sign away [his] rights" undermined his commitment to returning to drug treatment. Although petitioner contends that nothing precluded the circuit court from granting him an improvement period in this case, there is no evidence that he would comply with an improvement period.

West Virginia Code § 49-4-610(2)(B) provides that the circuit court may grant a parent a post-adjudicatory improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." "This Court has explained that 'an improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the miscreant parent to modify his/her behavior so as to correct the conditions of abuse and/or neglect with which he/she has been charged.'" *In re Kaitlyn P.*, 225 W. Va. 123, 126, 690 S.E.2d 131, 134 (2010) (citation omitted). However, the circuit court has discretion to deny an improvement period when no improvement is likely. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002). As set forth above, petitioner willingly left substance abuse treatment without completing the program because he valued employment with his father over correcting the issues of abuse and neglect at issue. Given petitioner's willful refusal to participate in services designed to remedy the conditions of abuse and neglect, it was disingenuous for him to assert that he would return to substance abuse treatment during the proceedings below. Further, petitioner's actions in refusing to successfully complete substance abuse treatment established that he was not likely to fully participate in an improvement period. As such, we find no error in the circuit court's denial of petitioner's motion for an improvement period.

Moreover, the evidence before the circuit court supports its termination of petitioner's parental rights. As set forth above, the DHHR presented extensive evidence of petitioner's noncompliance with services throughout the proceedings, including his refusal to reenter substance abuse treatment and his continued positive drug screens. West Virginia Code § 49-4-604(c)(6) permits a circuit court to terminate parental rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the child. With these parameters in mind, it is clear that the record supports the circuit court's finding that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect given his untreated

substance abuse issues. While it is true that petitioner may be able to undergo some treatment in the future for his substance abuse, such possible improvement was based on pure speculation. Further, petitioner often failed to avail himself of the DHHR's services, testing positive for controlled substances and leaving his drug treatment program. Although petitioner also takes issue with the timeframe from adjudication to termination, arguing that he should have been given additional time and an opportunity to demonstrate that he could correct the conditions of abuse and neglect, we have previously held that "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened." *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4, in part (citation omitted). Further, we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As such, we find no error in the termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 23, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**:

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison